# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs February 29, 2012

## EDWARD JEROME HARBISON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hamilton County**
**No. 280296      Jon Kerry Blackwood, Senior Judge**

**No. E2011-01711-CCA-R3-PC - Filed May 31, 2012**

Petitioner, Edward Jerome Harbison, appeals the Hamilton County Criminal Court's summary dismissal of his petition for writ of error coram nobis seeking relief from his 1983 convictions for first degree murder, second degree burglary, and grand larceny. Petitioner claims that an order of a previous coram nobis court establishes a new predicate for review. Petitioner also claims that a statement of a prosecutor during a previous hearing constitutes "new evidence." Following our review, we affirm the judgment of the error coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which THOMAS T. WOODALL, J., joined. Jerry L. Smith, J., not participating.

Edward Jerome Harbison, Nashville, Tennessee, Pro Se.

Robert E. Cooper, Jr., Attorney General and Reporter; and James E. Gaylord, Assistant Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts and Procedural History

This case involves an extensive procedural history. We begin with the succinct summary of the chronology of the case and the facts underlying the conviction from this court's opinion affirming the previous error coram nobis court's denial of relief:

In 1983, a Hamilton County Criminal Court jury convicted the petitioner, Edward Jerome Harbison, of first degree murder and sentenced him to death. The supreme court affirmed the conviction on direct appeal. *See State v. Harbison*, 704 S.W.2d 314 (Tenn. 1986). Subsequently, the petitioner filed a post-conviction petition. The trial court denied post-conviction relief, and this court affirmed. *See Edward Jerome Harbison v. State*, No. 03C01-9204-CR-00125, 1996 Tenn. Crim. App. LEXIS 307, 1996 WL 266114 (Knoxville, May 20, 1996). Upon alleged discovery of new evidence, the petitioner moved to reopen his post-conviction petition. The trial court converted the motion to a petition for writ of error coram nobis and denied relief.

. . . .

On the night of January 15, 1983, Frank Russell came home to find his wife dead in their home. The house was in disarray and had been burglarized, and there were signs of a struggle. After an investigation, the police went to the home of Janice Duckett, who was the petitioner's girlfriend and David Schreane's sister. There, the police recovered items taken from the Russells' home. The police questioned David Schreane, who led the police to a marble vase. Testing on the vase revealed the presence of blood. The police also found fragments consistent with the vase in the petitioner's car and questioned the petitioner, who confessed to killing the victim. According to the confession, the petitioner and Schreane went to the Russell home, found no one home, and began putting items from the home into Schreane's car. The victim returned home, discovered the two men inside, and struggled with the petitioner. The petitioner hit the victim several times with the marble vase, breaking all of the bones in the victim's head. At trial, the petitioner testified that he did not kill the victim and was at Janice Duckett's apartment on the night of the crime. He stated that he confessed to killing the victim because the police threatened to arrest Janice Duckett and take away her children. Janice Duckett also testified at trial that the petitioner was at her home on the night of the murder. The jury convicted the petitioner.

The supreme court affirmed the petitioner's conviction in 1986, and this court affirmed the denial of post-conviction relief in May 1996. In February 1997, counsel was appointed to represent the petitioner in a petition for habeas corpus relief in federal district court. In October 1997, the Chattanooga Police Department sent counsel two hundred six previously undisclosed documents about its investigation of the case. In March 2001, the district court denied the

petition for habeas corpus relief. In June 2001, the petitioner's attorneys filed a motion to reopen his post-conviction petition in the Hamilton County Criminal Court, claiming the petitioner was entitled to relief in light of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In December 2001, the petitioner's attorneys filed an amended petition, arguing that the petitioner was entitled to relief under *Apprendi* and that the petitioner received the ineffective assistance of counsel during the direct appeal of his convictions because the attorney representing him on direct appeal also represented Ray Harrison, who the petition claimed had been a prime suspect in the victim's murder. The amended petition also raised for the first time a claim that the state withheld the Chattanooga Police Department records in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). According to the amended petition, some of the police department records were exculpatory because they indicated David Schreane and Ray Harrison, not the petitioner, broke into the Russells' home and killed the victim. On February 13, 2003, the state filed a response to the allegations in the petition, arguing that the petitioner's Brady claim was time-barred. On April 22, 2003, the petitioner filed a motion requesting that the trial court treat his motions to reopen as a writ of error coram nobis.

On October 13, 2003, the trial court held a coram nobis hearing. According to the trial court's order denying error coram nobis relief, the purpose of the hearing was "to allow the parties to present evidence related to the timeliness of the asserted Brady claims and related matters." Judge William B. Mitchell Carter testified that he was one of two attorneys who represented the petitioner at trial and that his co-counsel for the case was deceased. He filed many motions in the case, including motions for discovery and exculpatory evidence, which were granted by the trial court. Judge Carter stated that the petitioner insisted on using an alibi defense. However, the use of an alibi defense was "complicated" by the fact that the petitioner had confessed to killing the victim. At trial, the petitioner denied killing the victim and stated that his confession was coerced because the police had threatened to arrest his girlfriend and put her children in foster care. Judge Carter was aware of allegations that the victim had been involved in selling stolen property before her death, but he did not pursue the allegations during his investigation of the petitioner's case.

The petitioner introduced into evidence two hundred six documents provided by the Chattanooga Police Department and had Judge Carter read some of the police reports into evidence. According to the reports, a man

named David Boss gave a statement to police about the victim's murder. In the statement, Mr. Boss related that the victim had sold stolen property to Charlene Harrison, Ray Harrison's wife, and that Ray Harrison had tried to sell the victim a ring one week before the victim was killed. Mr. Boss also told police that Charlene Harrison told Mr. Boss that Ray Harrison was in the Russell house at the time of the murder. However, Mrs. Harrison told David Boss that Ray Harrison did not kill the victim. Judge Carter testified that he was aware Ray Harrison was a suspect in the case but he was unable to recall specific information about Harrison. He acknowledged that the police department records indicated that a week before the victim's death, Ray Harrison was mad at the victim over a "ring deal" that had "gone bad." Judge Carter testified that he could not remember if he had had the Chattanooga Police Department records while he was representing the petitioner, that having the records might have affected his investigation of the case, and that the police department documents might have been helpful to the defense.

William Gerald Tidwell, Sr., testified that he was appointed to represent the petitioner in the post-conviction proceeding. He said that before the post-conviction evidentiary hearing, he tried to obtain the Chattanooga Police Department's records regarding the petitioner's case but received none. He said that he only recently had become aware of the police department's records for the case and recently had learned that the victim may have been involved in selling stolen property. He also stated that he had not known while representing the petitioner that Charlene Harrison placed Ray Harrison at the scene of the crime. He said that if he had had this information, he would have brought it up during the petitioner's post-conviction evidentiary hearing. He said that he also had been unaware that the petitioner's codefendant, David Schreane, had threatened to accuse the petitioner of killing the victim if the petitioner did not stop contacting Schreane's girlfriend. Finally, Mr. Tidwell stated that the police department records showed Ray Harrison had at one time agreed to take a polygraph examination regarding the victim's death if Harrison's attorney, Rodney Strong, could be present. However, Harrison later refused to take the polygraph test. He said that Rodney Strong represented the petitioner on direct appeal. Mr. Tidwell acknowledged that if he had known Mr. Strong had represented Ray Harrison and if he had known about the significant role Ray Harrison played in the case, he would have raised a conflict of interest issue in the post-conviction proceeding.

On cross-examination, Mr. Tidwell testified that he never received an indication that the Chattanooga police were trying to conceal evidence in the

-4-

petitioner's case. He did not recall ever seeing the documents introduced at the coram nobis hearing. During his representation of the petitioner, he had no indication that Rodney Strong was biased against the petitioner.

Rodney Strong testified that he handled the petitioner's motion for new trial and represented the petitioner on direct appeal. He stated that when he was appointed to the petitioner's case, he met with the petitioner and reviewed the trial transcript. Mr. Strong testified that he had no recollection of representing Ray Harrison. However, he acknowledged that a Chattanooga Police Department record indicated he had represented Harrison. He said that during the petitioner's direct appeal, he had been unaware that Ray Harrison was connected to the petitioner's case and had not known that Charlene Harrison had placed Ray Harrison at the scene of the crime. He said that if he had been aware that he represented Ray Harrison and that Harrison was connected to the petitioner's case, he would not have accepted the appointment to represent the petitioner. He said that if he represented Ray Harrison, it had not affected his representation of the petitioner. He related that he did not raise a Brady issue in the petitioner's new trial motion because he had been unaware of the police department records. On cross-examination, Mr. Strong stated that he did not remember "dealing with Harrison" and that he had never known the Chattanooga Police Department to hide police records.

Rosemarie Bryan testified that she was appointed to represent the petitioner in February 1997 and was currently representing him. She testified that in September 1997, she sent a letter to the Chattanooga Police Department, requesting records in the petitioner's case. In October 1997, the police department sent her its file. According to Ms. Bryan, the file contained "things that were fairly astoundingly amazing to us." In November 1997, Ms. Bryan filed the petitioner's petition for habeas corpus relief in federal district court. On cross-examination, Ms. Bryan testified that she did not file a petition for writ of error coram nobis in state court right away because the petitioner's federal habeas corpus case was still pending. She was unable to recall any specific discussions regarding whether to proceed in state court after the receipt of the documents. She stated that she raised a Brady issue in the habeas corpus petition and that the federal district court granted summary judgment for the State in March 2001.

Dana Hansen, Ms. Bryan's co-counsel in the instant case, testified that she began working on the petitioner's federal habeas corpus case in 1998. She said that at the time she and Ms. Bryan received the police department

documents, they could not file another post-conviction petition in state court because state law allowed only one post-conviction petition and the petitioner had filed a post-conviction petition in 1989. She stated that when the Tennessee Supreme Court filed *Workman v. State*, 41 S.W.3d 100 (Tenn. 2001), it gave the petitioner an opportunity to seek relief through a petition for writ of error coram nobis.

The trial court denied the petition for writ of error coram nobis. The court disagreed with the petitioner's assertion that he did not have an avenue of relief until the *Workman* decision. The trial court stated that "[t]he statute permitting petitions for writs of error coram nobis is not by any means new and litigants have continually argued the application of the due process clause to various statutes of limitations."

The court noted that the petitioner became aware of the alleged exculpatory evidence in October 1997 but waited approximately fifty months "before seeking any review in state court." The trial court found that "the time within which the petition was filed exceeds the reasonable opportunity afforded by due process" and dismissed the petition on the basis that it was time-barred.

*Edward Jerome Harbison v. State*, No. E2004-00885-CCA-R28-PD, 2005 WL 1521910, at *1-4 (Tenn. Crim. App. June 27, 2005), *perm app. denied* (Tenn. Dec. 19, 2005) (footnotes omitted).

In 2007, petitioner filed a second motion to reopen his post-conviction petition or, alternatively, a petition for writ of error coram nobis. As grounds, petitioner alleged that he obtained certified copies of the Chattanooga City Court docket for the day of his arrest that showed he had been subject to a warrantless arrest. According to petitioner, it followed that as a result of the alleged warrantless arrest, he was unconstitutionally seized. Petitioner argued that the error was further compounded by the State's prosecutorial misconduct in failing to disclose the absence of a warrant.

The court held a hearing and subsequently denied relief on May 24, 2010. In doing so, the court reasoned that petitioner's pleadings did not satisfy the statutory requirements for a motion to reopen a petition for post-conviction relief. The court further found that the issue of probable cause to arrest petitioner had been previously addressed by the courts and was not properly reviewable by writ of error coram nobis.

-6-

After initiating an appeal from the previous error coram nobis court's order, petitioner dismissed his appeal to this court to pursue his request for executive clemency from the Governor. On January 22, 2011, the Governor commuted petitioner's death sentence to life imprisonment without the possibility of parole.

Petitioner then filed the instant petition for writ of error coram nobis on May 23, 2011. He claims to have found new evidence to support his previously litigated argument that the lack of an arrest warrant, as established by the Chattanooga City Court docket, proved that he was subjected to a warrantless arrest and was therefore unconstitutionally seized. That new evidence allegedly consists of statements set forth in the previous coram nobis court's May 24, 2010 order denying relief. Petitioner further claims that the State created new grounds by virtue of a statement made in its argument to the prior coram nobis court. The instant coram nobis court summarily dismissed the petition that is the subject of this appeal.

## II. Analysis

The decision to grant or to deny a petition for writ of error coram nobis on its merits is left to the sound discretion of the trial court. *Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010) (citing *State v. Vasques*, 221 S.W.3d 514, 527-28 (Tenn. 2007)). A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006) (citing *Howell v. State*, 185 S.W.3d 319, 337 (Tenn. 2006)). The writ of error coram nobis is an "extraordinary procedural remedy . . . into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999). To obtain coram nobis relief, petitioner must show that the newly discovered evidence could not have been obtained before trial by either the petitioner or his counsel exercising reasonable diligence. *Vasques*, 221 S.W.3d at 527-28. Our legislature has limited the relief available through the writ:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Tenn. Code Ann. § 40-26-105(b) (Supp. 2011).

-7-

We note that petitioner's claim arguably falls outside of the one year statute of limitation. Tenn. Code. Ann. § 27-7-103 (2010). However, the State did not raise this issue in its brief. The State has the burden of raising untimeliness as an affirmative defense. *Harris v. State*, 102 S.W.3d 587, 593 (Tenn. 2007). Therefore, we will consider petitioner's arguments.

In support of this petition for writ of error coram nobis, petitioner maintains that a "new predicate" exists to support issuance of the writ. The "new evidence" to which petitioner refers is the order of the previous coram nobis court dated May 24, 2010. An order issued by a trial court is not evidence. *Charles Gross v. Michael K. McKenna*, No. E2005-02488-COA-R3-CV, 2007 WL 3171155, at *3 (Tenn. Ct. App. Oct. 30, 2007) (citing *State v. Draper*, 800 S.W.2d 489, 493 (Tenn. Crim. App. 1990) (holding that "factual assertions in orders regarding the underlying dispute are not 'evidence'"), *perm. app. denied* (Tenn. May 5, 2008)), distinguished on other grounds by *State v. Alvarado*, 961 S.W.2d 136 (Tenn. Crim. App. 1996); *cf. Cyrus Deville Wilson v. State*, No. M2009-02241-SC-R11-CO (Tenn. 2012) (district attorney general's hand-written note in file constitutes work product and is, therefore, both non-discoverable and inadmissible).

Petitioner also contends that the statements of a prosecutor during a previous hearing constitute "new evidence." This court has previously considered and rejected that argument. *Draper*, 800 S.W.2d at 493. Petitioner cannot employ a novel strategy to overcome a procedural bar and justify our review of a previously decided issue. Petitioner simply has not raised claims of "new evidence" that required the coram nobis court to conduct an evidentiary hearing. *See Harris v. State*, 301 S.W.3d 141, 153-54 (Tenn. 2010) (Koch, J., concurring). The coram nobis court did not abuse its discretion in summarily dismissing the petition without an evidentiary hearing. *See Howard J. Atkins v. State*, No. W2010-00092-CCA-R3-C, 2010 WL 4274737, at *2 (Tenn. Crim. App. Oct. 26, 2010), *perm. app. denied* (Tenn. Feb. 16, 2011) (applying "abuse of discretion" standard in reviewing coram nobis court's summary dismissal of a petition for relief).

Petitioner has obtained a thorough review of his issues over almost thirty years. In state court, his claims have been subjected to direct review, one petition for post-conviction relief, and three petitions for error coram nobis relief. He has also been denied habeas corpus relief in federal court. Moreover, his death sentence was commuted to life imprisonment without the possibility of parole by the Governor. All of petitioner's claims not addressed in this opinion have been previously litigated and are outside of the parameters of the writ of error coram nobis. Tenn. Code. Ann. § 40-26-105(b) (Supp. 2011).

## IV.  Conclusion

After a thorough review of the record, we affirm the summary dismissal of the petition for writ of error coram nobis.

_____

ROGER A. PAGE, JUDGE